FRANK MORGAN *v*. J. E. DEVERANNES ET AL.

May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed June 10, 1912.

*Elections—Secret Ballot—Irregularly Marked Ballots.*

Under P. S. 181, governing the acceptance or rejection of irregularly marked ballots, it cannot be said that the inspectors of an election were not warranted in counting a ballot marked with double or irregular markings instead of with the required cross (X), where it is not impossible to determine the intent of the voter, and the record does not show that the inspectors of election were satisfied and decided that the markings were made for the purpose of enabling the ballot to be identified and the vote traced.

PETITION FOR MANDAMUS, brought to the Supreme Court for Chittenden County, at its May Term, 1912, and then heard on an agreed statement of facts.

It appeared that the parties are residents and legal voters in ward four of the city of Burlington; that on March 5, 1912, a duly warned meeting of the legal voters of that ward was held for the purpose, among other things, of electing an alderman therefrom; that the petitioner and one Martin E. Sullivan were candidates for that office, their names duly appearing on the ballots used at that meeting, Martin's below the petitioner's; that three of the respondents were inspectors of election, and the other clerk, within and for that ward, and so acted at that meeting; that 244 legal ballots were duly cast and counted for the

petitioner, and 242 legal ballots duly cast and counted for Sullivan; that only two other ballots were cast, which were marked as described in the opinion; that the inspectors of election counted those two ballots as cast for Sullivan, and announced the vote to be a tie, and the clerk of the ward so recorded it.

The petition prays for a writ of mandamus compelling the inspectors of election to correct their count of the ballots cast at said meeting, and compelling the clerk of the ward to correct his record, and to furnish the petitioner with a certificate of his election as alderman of the city of Burlington from ward four.

Section 340 of the City Charter reads: "Except when changed or modified by the provisions of this act, or by any legal regulation or ordinance of said city, all provisions of the statutes of this State relating to towns and town officers shall apply to said city and to the several officers thereof corresponding to like officers of towns. In such statutes the words 'selectmen' and 'board of civil authority' shall include 'city council' and the words 'first selectman' shall include 'mayor.'"

The Public Statutes, Sec. 177, reads: "On receiving his ballot or ballots, the voter shall forthwith, and without leaving the polling place or going outside the guard rail, retire alone to one of the booths not occupied by any other person and prepare his ballot or ballots by making in the appropriate margin or place, a cross (X) opposite the name of the candidate of his choice for each office to be filled, or by filling in the name of the candidate of his choice in the blank space provided therefor, and making a cross (X) opposite thereto; or, if he desires to vote for the entire list of candidates in any column, by making a cross (X) in the square over such column; and, if a question is submitted to the vote of the people, by making in the appropriate margin or place, a cross (X) against the answer which he desires to give." Section 180 provides, among other things, for the return and preservation of spoiled and unused ballots. Section 181 reads: "If the voter marks more names than there are persons to be elected to an office or if, for any reason, it is impossible to determine the intent of the voter as to his choice for an office to be filled, his ballot shall not be counted for such office. If the board of civil authority is satisfied and so decides by majority vote of those present, that any double or irregular markings of a ballot were made for the purpose of enabling it to be identified and the vote traced so as to defeat the secrecy and purity of the

ballot law, such ballot may be rejected. Said board shall make
a record of such rejection and the reason for it or the evidence
on which it was based and shall file the same with the ballots
counted as provided in section one hundred and ninety. No
ballot, without the official indorsement, shall, except as other-
wise provided, be deposited in the ballot box; and none but bal-
lots provided in accordance with this title shall be counted.
Ballots not counted shall be marked 'defective' on the back
thereof and returned and preserved as provided for returning
and preserving ballots in the preceding section.''

*A. L. Sherman* and *H. S. Peck* for the petitioner.

*M. G. Leary* for the respondents.

WATSON, J. The charter of the city of Burlington contains
no provision requiring the ballots used in a local election to be
marked by the voter in any particular manner, nor for the re-
jection of ballots cast because defective. The relator contends
that under section 340, the general provisions of the statutes of
the State pertaining to ballots to be used in general and in
local elections apply. We assume, but do not decide, this to be
so, and determine the matter before us on that basis.

Section 181, of the Public Statutes, specifies that, unless
otherwise provided, no ballot without the official indorsement
shall be deposited in the ballot box, and none but ballots pro-
vided according to that title shall be counted; but it contains
no provision to the effect that no ballot marked otherwise than
with a cross (X) as specified in section 177, shall be deposited
in the ballot box, nor if deposited, that it shall not be counted,
except when it is impossible to determine the intent of the voter
as to his choice for an office to be filled. It does, however, con-
tain specific provisions respecting ballots having double or ir-
regular markings thereon: ''If the board of civil authority,''—
in this case the inspectors of election,—''is satisfied and so de-
cides by majority vote of those present, that any double or
irregular markings of a ballot were made for the purpose of
enabling it to be identified and the vote traced so as to defeat the
secrecy and purity of the ballot law, such ballot may be re-
jected,'' and the board shall make a record of such rejection
with the reason for it or the evidence on which it is based, etc.

If possible to determine the intent of the voter as to his choice for an office to be filled, his ballot must be counted, even though it contains double or irregular markings, unless the board or official persons, whose duty it is by law to decide the matter, are satisfied and decide that the double or irregular markings thereon were made for the unlawful purpose specified, —certainly a question requiring by statute the exercise of judicial functions in its determination.

One of the ballots in question was marked with a cross (X) in conformity to the provisions of section 177 of the statutes, and consequently was properly counted. The other, instead of being marked in the appropriate margin or place by a cross (X), it was there marked by what purport to be two Arabic numerals standing side by side, as if used together to express a number. Undoubtedly this ballot contains what the statute designates as "double or irregular markings." Yet it is sufficient for the determination of the case to say that it cannot be said to be impossible to determine the intent of the voter as to his choice for the office to be filled, and the record does not show that the inspectors of election were satisfied and decided that such markings were made for the purpose of enabling the ballot to be identified and the vote traced so as to defeat the secrecy and purity of the ballot law, without which, as before seen, the ballot could not be rejected.

*Petition dismissed with costs.*